IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

|  |  |
|---|---|
| KEVIN ADAUL URRACO SIERRA<br><br>-v-<br><br>MICHAEL J. PITTS, *in his official capacity as Port Isabel Field Office Director*; MATTHEW T. ALBENCE, *in his official capacity as Acting Director for U.S. Immigration and Customs Enforcement*; CHAD WOLF, in his *official capacity as Acting United States Secretary of Homeland Security*; EDUARDO BENAVIDEZ, in his official capacity as Deportation Officer; DIANA SCOTT in her official capacity as Deportation Officer; ALEJOS MARTINEZ; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF HOMELAND SECURITY. | Civil Action No. <u>1:20-cv-29</u><br><br>**EXPEDITED CONSIDERATION REQUESTED** |

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND MOTION FOR A TEMPORARY RESTRAINING ORDER**

1. Petitioner Kevin Adaul Urraco-Sierra ("Petitioner" or "Kevin"), through counsel, respectfully files this expedited request for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and for a temporary restraining order directing his immediate release from immigration detention.

2. Kevin is an 18 year old asylum seeker in the United States who is currently unlawfully detained at the Port Isabel Detention Center ("PIDC"). Kevin is lawfully pursuing relief with U.S. Citizenship and Immigration Services ("USCIS") having affirmatively filed his asylum application prior to his 18th birthday. This Court should expedite review and enter a temporary restraining order correcting this ongoing, unlawful liberty deprivation.

## STATEMENT OF FACTS

3. Kevin was detained by U.S. immigration authorities on or about February 4, 2019, designated an Unaccompanied Child ("UC") and subsequently placed under the custody of the U.S. Department of Health and Human Services, Office of Refugee Resettlement ("ORR"). *See* Exhibit A. Kevin was under the custody of ORR for ten months. *See* Exhibit A. During his time in ORR custody, Kevin exhibited good behavior, indicating he was not a danger to himself or others.

4. Before reaching his eighteen birthday, Petitioner, through his immigration attorney, Gladys Yamell Hernandez, requested release on his own recognizance to the Immigration and Customs Enforcement ("ICE") juvenile deportation officer Eduardo Benavidez. *See* Exhibit B, C, & D. In the request, Petitioner provided information showing that he was neither a flight risk nor danger to the community, and proposed release to Lester Sierra, Oscar Hernandez or Posada Providencia, all less restrictive settings in accordance with 8 U.S. Code §1232(c)(2)(B). The deportation officer refused to review and give individual consideration of petitioner's request for release on his own recognizance and instead made prejudicial and generalized conclusions regarding children seeking asylum from Kevin's country of nationality. *See* Exhibit B.

5. Attorneys Hernandez and Miriam Aguayo expressed their concerns about this interaction with Deportation Officer Benavidez to the Juvenile Deportation Officer Supervisor

Diana Scott. *See* Exhibit B. Through Attorney Hernandez, Petitioner escalated his request for release to Supervisory Officer Scott, providing her with the same packet of information regarding appropriate alternatives to detention. *See* Exhibit B & D. Like Officer Benavidez, Supervisory Officer Scott also failed to give proper analysis of the request. *See* Exhibit B.

6.    Upon reaching his eighteenth birthday, on December 5, 2019, Petitioner was transferred from the custody of the ORR to ICE detention at PIDC where he has remained detained by ICE. *See* Exhibit E. On December 5, 2019, the ICE juvenile deportation officers decided not to release Kevin. The ICE deportation officer's decision failed to consider the appropriate least restrictive setting, as instructed by 8 U.S. Code §1232(c)(2)(B). *See* Exhibit B.

7.    ICE detained Kevin without complying with the requirements set forth in 8 U.S.C. § 1232(c)(2)(B). Specifically, ICE failed to "consider placement in the least restrictive setting available" or make any alternative to detention programs available. Quite the opposite, it automatically placed Kevin in adult detention without considering any alternatives. *See* Exhibit B. ICE's expressed concerns shared a bias about children from Kevin's country and asylum claims from children represented by counsel. *See* Exhibit B. This decision was sustained by Deportation Officer Alejos Martinez, even when we presented another request, which included an additional potential sponsor, Chasidy Lynn Huckabee. *See* Exhibit B & F. On information and belief, ICE routinely and systematically fails to comply with the requirements of Section 1232(c)(2)(B) with respect to unaccompanied immigrant children transferred into ICE's custody when they turn 18 years of age. Moreover, ICE has failed to establish any policies, programs, or procedures implementing these statutory requirements.

## CUSTODY

8.      Petitioner is currently in the custody of the Respondents. He is detained at PIDC in Los Fresnos, Texas. PIDC is located at: 27991 Buena Vista Blvd., Los Fresnos, TX 78566. Petitioner is under the direct control of the Respondents and their agents.

## JURISDICTION

9.      This Court has subject matter jurisdiction to review this writ of habeas corpus pursuant to 28 U.S.C. § 2241, Article I, §9 Cl. 2 of the Constitution of The United States of America (Suspension Clause) and 28 U.S.C. § 1331, as Petitioner is in custody under or by color of the United States, and such custody is in violation of the Constitution, laws or treaties of the United States.

10.     This Court has the authority to review this claim pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 101–913, which governs the conduct of federal administrative agencies. The APA permits a court to "compel agency action unlawfully withheld or unreasonably delayed," and to "hold unlawful and set aside agency action, findings and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The APA provides for judicial review of all "final agency action for which there is no other adequate remedy in court," 5 U.S.C. § 704. A final action is reviewable by this Court "to the extent that, specific 'final agency action' has an actual or immediately threatened effect." *Lujan v. National Wildlife Federation*, 497 U.S.871, 894 (1990).

11.     The writ of habeas corpus is available to challenge the legality of immigration detention. *INS v St. Cyr,* 533 U.S. 289, 314 (2001). In addition, this Court has habeas jurisdiction to review statutory and constitutional claims. *Bravo v Ashcroft*, 341 F.3d 590, 592-93 (5th Cir. 2003).

## VENUE

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Petitioner is detained by ICE at PIDC in Los Fresnos, Texas. Respondents are employees, officers of the United States or under contract with the United States acting in their official capacity in this District.

13. This Court has jurisdiction to grant the requested relief because Kevin is being confined within this District. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004).

## LEGAL ARGUMENTS

14. Kevin is being held in federal immigration custody in violation of 8 U.S. Code §1232(c)(2)(B). The government failed to consider placement in the least restrictive setting available after taking into account the danger to himself and others and risk of flight, and making alternative to detention programs available to him, including release to individual and organizational sponsors and supervised group homes.

15. The circumstances of this case are clear, and every day's delay exacerbates the unlawful deprivation of Kevin's liberty without due process. This Court should therefore resolve Kevin's petition for a writ of habeas corpus on an expedited basis. In the interim, it should grant a temporary restraining order providing for Kevin's immediate release from federal custody.

16. Kevin is entitled to a temporary restraining order if he can show "(1) a substantial likelihood of success on the merits; (2) a substantial threat that [he] will suffer irreparable injury if the [restraining order] is denied; (3) that the threatened injury outweighs any damage that the [restraining order] might cause the defendant; and (4) that the [restraining order] will not disserve the public interest." *Jebril v. Joslin*, No. 07 Civ. 436, 2008 WL 2491658, at *2 (S.D. Tex. June

18, 2008) (quoting *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999) (per curiam)); *see also* Fed. R. Civ. P. 65. Each factor is satisfied here.

17. *First,* Kevin is likely to succeed on the merits of his habeas claim. Under the Trafficking Victims Protection Reauthorization Act ("TVPRA") when an Unaccompanied Child in the custody of the Secretary of Health and Human Services "reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." 8 U.S.C. §1232(c)(2)(B). The law further states that such individuals "shall be eligible to participate in alternative to detention programs [such as] placement of the alien with an individual or an organizational sponsor, or in a supervised group home." *Id.*

18. Note, that the United States District Court for the District of Columbia already enjoined ICE from exactly the type of behavior exercised by Respondents: failing to comply with 1232(c)(2)(B). *See Ramirez v. ICE*, 310 F.Supp.3d 7, 34 (D.D.C. 2018). Indeed, "per the plain language of the provision, all who meet those conditions [being a UC transferred to DHS custody upon turning 18]—regardless of the agency's flight risk or dangerousness determinations and irrespective of the provision under which the individual has been detained—are entitled to consideration." *Ramirez v. ICE,* 338 F. Supp. 3d 1, 28 (D.D.C. 2018). This class action protect "[a]ll former unaccompanied alien children who are detained or will be detained by ICE after being transferred by ORR because they have turned 18 years of age and as to whom ICE did not consider placement in the least restrictive setting available, including alternatives to detention programs, as required by 8 U.S.C. § 1232(c)(2)(B)." *Ramirez v. ICE,* 338 F. Supp. 3d 1, 28 (D.D.C. 2018)

19. Note, that in Garcia Ramirez v ICE, the United States District Court for the District of Columbia entered a Preliminary Injunction in a putative class action lawsuit preventing the government from unlawful transfers, where like in the present case, the government failed to consider the least restrictive setting. *See Garcia Ramirez v ICE,* 310 F.Supp.3d 7 (D.D.C. 2018)

20. Unlike ORR, which has multiple placement options for unaccompanied children, (e.g. long-term foster care, shelter care, staff-secure shelters, or a secure shelter), ICE places all immigrant children who turn 18 into only one setting; adult detention. In doing so, ICE fails to comply with Congress's mandate at Section 1232(c)(2)(B).

21. Here, ICE violated the law when it failed to consider the factors mandated in Section 1232(c)(2)(B). Specifically, it did not "consider placement in the least restrictive setting available" or make any alternative to detention programs available. Quite the opposite, it automatically placed Kevin in adult detention without considering any alternatives. This clear violation of law that warrants immediate relief and shows that Kevin is likely to succeed on the merits of his claims.

22. *Second*, Kevin's continued unlawful detention will cause him irreparable injury. He was detained for ten months in ORR custody. In addition, he has now been detained over 2 months in adult detention, a setting not proper for his developmental stage. Every additional moment that the federal government now detains Kevin only serves to further compound an injury he should never have endured in the first place.

23. *Third,* no countervailing interest outweighs Kevin's right to immediate release. Upon release, Kevin has made arrangements to live with potential sponsors Oscar Hernandez, or Chasidy Lynn Huckabee, and/or La Posada Providencia in San Benito. Information about this appropriate, less restrictive setting was provided to Respondents. Upon release on his own

recognizance, Petitioner will comply with the government's requirements, such as routine check-ins and appearances with the immigration agencies before which he will continue to pursue his asylum claim.

24. *Fourth*, allowing the government to detain a Petitioner in clear violation of law would not serve the public interest. To the contrary, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the United States Constitution protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

25. The requirement that DHS consider alternatives to detention and prioritize releasing UCs turning 18 has a rich background, beginning with the *Flores Settlement Agreement*. *Flores v. Reno*, No. CV 85-4544 RJK (Px), C.D. Cal, January 17, 1997 (*"Flores Settlement Agreement"*). Among other things, the Agreement requires: (a) release without unnecessary delay, (b) release to an adult caregiver, with parents and other family members given priority, and (c) placement in the "least restrictive setting." *Flores Settlement Agreement*, Paras. 11, 14.CV 85-4544 RJK (Px), C.D. Cal, January 17, 1997 ¶ 11. In 2002, Congress passed the Homeland Security Act, extending to children key protections of the Flores Settlement Agreement, including placement in the least restrictive setting. Pub. L. 107-296, 116 Stat. 2153 (Nov. 25, 2002)

26. In 2008, Congress further strengthened protections for unaccompanied children through the Trafficking Victims Protection Reauthorization Act (TVPRA). See Pub. L. 110-457, 122 Stat. 5044 (Dec. 23, 2008). The TVPRA enacted procedures for ensuring "safe and secure placements" and mandates that an unaccompanied child "shall be promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(1).

27. In 2013, Congress enacted a statutory provision to address the placement of unaccompanied immigrant children, like Petitioner, who have turned 18 and been transferred out of ORR and into ICE custody. See Violence Against Women Act in 2013, Pub. L. 113-4, 127 Stat. 156, (codified at 8 U.S.C. § 1232(c)(2)(B) (March 7, 2013). That provision requires that ICE "shall consider placement" of such 18-year-olds "in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(B). It further requires that such children "shall be eligible to participate in alternative to detention programs, utilizing a "continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home." *Id*. This provision is an unequivocal expression of Congressional intent to continue the protection of vulnerable young people when they reach their 18th birthday.

28. Kevin clearly fits within this group of vulnerable young people that Congress intended to protect and provided with additional safeguards. ICE violated his rights when it failed to consider placing him in a setting other than adult detention.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

29. Kevin has made prudential efforts to request his release. Before reaching his eighteenth birthday, Petitioner, through his immigration attorney, Gladys Yamell Hernandez, requested release on his own recognizance to the ICE juvenile deportation officer Eduardo Benavidez and supervisor Diana Scott. In the request, Petitioner provided information showing that he was neither a flight risk nor danger to the community, and proposed release to a family friend, a less restrictive setting in accordance with 8 U.S. Code §1232(c)(2)(B).

30. Furthermore, Petitioner, through his immigration attorney, Gladys Yamell Hernandez, requested release on his own recognizance or low bond to the adult deportation officer Alejos Martinez at PIDC and to the Assistant United States Attorney. However, they failed to properly consider the factors set forth at 8 U.S. Code §1232(c)(2)(B). There is no other appropriate remedy to address the claims raised in this Petition.

**PRAYER FOR RELIEF**

Petitioner's continued detention in violation of law presents immediate, ongoing harm that warrant swift relief. Accordingly, the Petitioner respectfully requested that this court:

1. Issue a temporary restraining order directing Kevin's immediate release from DHS custody;

2. expedite consideration of the writ of habeas and issue an order to show cause pursuant to 28 U.S.C. § 2243;

3. grant a writ of habeas corpus that makes permanent the temporary relief that Kevin now seeks;

4. award fees and costs under Equal Access to Justice Act "EAJA", 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

5. grant any other and further relief that this court deems just and proper.

**Respectfully submitted**

/s/ Ángel O. Olivo García                                                              Dated: February 24, 2020

ÁNGEL O. OLIVO GARCÍA
Attorney-in-Charge for Petitioner
Southern District of Texas ID: 3352011
South Texas Pro Bono Asylum
Representation Project (ProBAR)
202 S 1ST St., Ste. 300
Harlingen, Texas 78550
T: 956-365-3775
F: 956-365-3789
angel.olivogarcia@abaprobar.org
angelolivogarcia@gmail.com

/s/ Belia A. Peña

Belia A. Peña
Attorney for Petitioner
Southern District of Texas ID: 3244187
South Texas Pro Bono Asylum
Representation Project (ProBAR)
202 S 1ST St., Ste. 300
Harlingen, Texas 78550
T: 956-365-3775
F: 956-365-3789

## VERIFICATION

I, Angel O. Olivo Garcia, under penalty of perjury, states that I am an Attorney authorized to act on behalf of the Petitioner in the forgoing writ of habeas corpus and I affirm the truth of the contents contained therein based upon my personal knowledge,

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, the undersigned attorney electronically filed the foregoing motion with the court clerk using the CM/ECF system. I have served counsel of record in the foregoing matter with one copy of the forgoing petition by email to Christopher Pineda, AUSA at christopher.pineda@usdoj.gov.

s/ Ángel O. Olivo García